UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------------------x
                                                                                       :

**SECURITIES AND EXCHANGE COMMISSION,**  :
100 F St., N.E.,
Washington, DC 20549   :
                     **Applicant,**  :  MISC. No. _____
                                            :
    v.   :
                               :

**JULIUS MAKIRI JENGE,**   :
1600 Granby Street, Apt. 304
Norfolk, VA 23510-2646   :
                    **Respondent.**   :
                         :
---------------------------------------------------------------------x

**SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND
<u>FOR AN ORDER REQUIRING OBEDIENCE TO SUBPOENA</u>**

The Securities and Exchange Commission requests that the Court enforce an administrative subpoena issued to Julius Makiri Jenge ("Jenge") as part of an investigation into possible violations of the federal securities laws. Jenge has failed to comply with the subpoena's directives to produce documents and appear for testimony. For the reasons set forth below, this Court should order Jenge to comply with the subpoena.

**STATEMENT OF FACTS**

**I.      The Trading Suspension**

On May 26, 2021, the Commission issued an Order of Suspension of Trading (the "Trading Suspension Order"), which suspended trading in the securities of Minerco, Inc. for a period of ten days. Declaration of Adam Eisner ("Eisner Decl."), ¶ 4, Exh. 1. The Trading Suspension Order states that a suspension was required "because of questions and concerns regarding the adequacy

1

and accuracy of information about [Minerco] in the marketplace and unusual and unexplained activity affecting the market for its securities." *Id.* In particular, the Trading Suspension Order noted concerns "about the status of [Minerco's] corporate organization, its ownership, the accuracy and completeness of its public statements to investors about its activities . . . and the possibility of manipulation of the market for its securities." *Id.*

Minerco and its CEO, Julius Jenge, are aware of the trading suspension. On June 7, 2021, Minerco and Jenge publicly announced that Minerco "has hired SEC counsel and will fully cooperate with the SEC in a timely manner." *See* https://finance.yahoo.com/news/minerco-mine-responds-sec-suspension-143000619.html (Minerco (MINE) Responds To SEC Suspension of Trading on OTC Markets) (last accessed November 23, 2021).

II.     **The Investigation**

On May 28, 2021, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony in an investigation entitled *In the Matter of Minerco, Inc.* (the "Formal Order"). Eisner Decl., ¶ 6.[1] The Formal Order directs the Commission staff to conduct a private investigation to determine whether any persons or entities have violated or are violating various provisions of the securities laws in connection with the activities of Minerco. *Id.* The Formal Order specifically authorizes certain members of the Commission staff to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the inquiry. *Id.*

---

[1] Commission formal orders are not public. For this reason, the Commission has not included a copy of the Formal Order with this Application. If the Court deems it necessary, the SEC stands ready to provide the Court a copy of the Formal Order for an *in camera* review.

Pursuant to the Formal Order, the Commission staff is investigating whether Minerco or others working on Minerco's behalf violated the antifraud provisions of the federal securities laws by making material misrepresentations or engaging in deceptive conduct in connection with the purchase or sale of securities. *Id.* at ¶ 7.  Specifically, the Commission staff is investigating, among other things: (1) Minerco's and other publicly-traded companies' ability to conduct business under the law of its state of incorporation, (2) the nature of Minerco's business operations, (3) the purported acquisition of Minerco, and (4) the financial results of Minerco's operations. *Id.* It is similarly investigating whether TransAtlantic Capital, Inc. ("TACI"), another public issuer that shares an address with Minerco, or those working on its behalf, have violated the antifraud provisions of the federal securities laws by making material misrepresentations to investors. *Id.*

### III.   The Subpoena

Respondent Julius Makiri Jenge is the President, CEO and Director of Minerco, Inc. *Id.* at ¶ 8.  He is also the CEO of TACI. *Id.*

On October 1, 2021, the Commission staff issued a subpoena (the "Subpoena") to Jenge in connection with its investigation regarding Minerco. *Id.* at ¶ 9, Exh. 2.  The Subpoena calls for the production of certain documents concerning the business activities of Minerco and TACI, including documents related to their incorporation in the State of Nevada. *Id.*  The original return date for the production of documents was October 15, 2021. *Id.*  The Subpoena also calls for Jenge to appear for testimony via audio-video teleconference originating from the Commission's headquarters in Washington, D.C. on November 2, 2021. *Id.*

UPS delivered the Subpoena to the garage of Jenge's residence on Monday, October 4, 2021, at 9:18 a.m.  *Id.* at ¶ 10, Exh. 3.

Commission staff also emailed a copy of the Subpoena to Jenge on multiple occasions. On October 1, 2021, Commission staff emailed the Subpoena to Jenge using the email address he used to conduct business for Minerco. *Id.* at ¶ 11, Exh. 4. The email was delivered to Jenge on October 1, 2021 at 12:17 p.m. *Id.* The email informed Jenge of the Subpoena and response deadlines and asked him or his counsel to contact the staff. *Id.* On October 5, 2021, Commission staff sent an additional email to Jenge at the address he used to conduct business for Minerco, as well as four additional email addresses that Commission staff determined he may have previously used. *Id.* at ¶ 12, Exh. 5. The email identified the sender as an attorney with the Commission and asked Jenge to contact him about correspondence sent in relation to an official matter of the SEC. *Id.*

On October 7, 2021, Commission staff re-issued the Subpoena to Jenge at another address in Annapolis Junction, Maryland that Commission staff determined based upon a public records search may have been a residence of Jenge's. *Id.* at ¶ 13, Exh. 6. The re-issued subpoena called for production of documents by October 21, 2021, but was otherwise identical to the original Subpoena, including requiring his appearance for testimony via audio-visual teleconference on November 2, 2021. *Id.*

On October 12, 2021, Commission staff sent a copy of the re-issued subpoena via email to the address Jenge used to conduct business for Minerco. *Id.* at ¶ 14, Exh. 7. On October 22, 2021, Commission staff sent an email to five email addresses that may have belonged to Jenge, asking him to contact Commission staff "to discuss an urgent matter of the U.S. Securities and Exchange Commission" and informing him that "your failure to respond may lead to the institution of an action in federal district court." *Id.* at ¶ 15, Exh. 8.

On November 1, 2021, a private investigator and process server hired by the Commission determined through a public records database and other means of investigation that Jenge resides at the address at which the SEC's subpoena was issued and served on October 1, 2021. *Id.* at ¶ 16.

Jenge failed to produce any documents in response to the Subpoena. *Id.* at ¶17. Jenge also failed to appear for testimony on the date and at the time required by the Subpoena. *Id.* Jenge has never responded to any email correspondence by the Commission staff regarding the Subpoena and the investigation. *Id.*

**ARGUMENT**

**I.     This Court Has Jurisdiction Over This Action and Over Jenge**

This Court has subject matter jurisdiction to enforce the subpoena in aid of the Commission's investigation. Congress has explicitly authorized the Commission to seek, and the federal courts to issue, an order compelling compliance with a Commission subpoena if a person refuses to comply. 15 U.S.C. §§ 78u(c), 77v(b).[2]

This Court also has personal jurisdiction over Jenge. Congress has authorized nationwide service of process for Commission investigative subpoenas. 15 U.S.C. § 78u(b). "When the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States.... Specific contacts with the district in which enforcement is sought ... are unnecessary." *SEC v. LovesLines*

---

[2] The Commission may seek an order requiring compliance with a subpoena upon application because subpoena enforcement proceedings are generally summary in nature, and, under exceptions contained in Rule 81(a)(3) of the Federal Rules of Civil Procedure, can be heard without strict adherence to the Federal Rules. *See e.g., SEC v. Sprecher,* 594 F.2d 317, 320 (2d Cir. 1979); *SEC v. First Security Bank of Utah,* 447 F.2d 166, 168 (10th Cir. 1971).

*Overseas Mgmt., Ltd.*, No. MISC. 04-302RWRAK, 2007 WL 581909, at *3 (D.D.C. Feb. 21, 2007) (quoting *In re Application to Enforce Admin. Supoenas Duces Tecum of the SEC v. Knowles,* 87 F.3d 413, 417 (10th Cir.1996)) (finding that a court in this district could exercise personal jurisdiction and enforce an SEC subpoena without finding that the respondent had minimal contacts with this district). In this case, Jenge lives in Virginia, and the conduct at issue occurred within the borders of the United States. Minimum contacts therefore exist, and the Court may exercise personal jurisdiction over Jenge. *See id.*

Finally, venue is proper before this Court because the Exchange Act authorizes the Commission to file an investigative subpoena enforcement action in the district court "within the jurisdiction of which such investigation or proceeding is carried on." 15 U.S.C. § 78u(c). Here, Commission staff is conducting the investigation in Washington, D.C. and working in the Commission's Home Office in Washington, D.C.[3] Venue for the enforcement of the Subpoenas appropriately lies in this District.

**II.     The Subpoena Was Property Issued and Served**

Section 19(c) of the Securities Act and Section 21(b) of the Exchange Act provide that the Commission may, in the course of conducting investigations, designate officers and empower them to subpoena witnesses. 15 U.S.C. §§ 77s(c), 78u(b). Pursuant to Rule 8 of the SEC's Rules Relating to Investigations and Rules of Practice, investigative subpoenas may be served by several methods, including by sending the papers through a commercial

---

[3] Given the Commission's remote telework position in light of the COVID-19 pandemic, the Subpoena called for physical documents to be sent to the Commission's operations office in Chantilly, Virginia and for testimony to be conducted by audio-visual teleconference using the Commission's WebEx internet platform. The staff intended to initiate the WebEx testimony from the Commission's Home Office in Washington, D.C., although participants on the call may be physically located in the District of Columbia, Maryland and Virginia.

courier service or express delivery service, in which case service is complete upon delivery. 17 C.F.R. §§ 203.8, 201.150(d).  Here, a Division of Enforcement staff attorney, designated in a Formal Order as an officer of the Commission, sent the subpoena via UPS, an express delivery service, to Jenge at his residence, and it was delivered there.  Eisner Decl. ¶ X.  The Commission staff therefore properly issued and served the subpoena.

### III. The Commission Has Met Its Burden for Enforcement of the Subpoena

A court must enforce an administrative subpoena if "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 253 (D.C. Cir. 2005) (quoting *U.S. v. Morton Salt, Co.*, 338 U.S. 632, 652-53 (1950)).  Once these threshold criteria are met, the burden shifts to the opposing party to establish that the subpoena is unreasonable. *SEC v. Brigadoon Scotch Distrib. Co*., 480 F.2d 1047, 1056 (2d Cir. 1973).  The burden of showing unreasonableness "is not easily met." *Id*.

The Commission's subpoena in this case readily satisfies the standard articulated in *ASAT*.  First, the Commission's investigation is being conducted pursuant to authority vested in the Commission by Congress. *See* 15 U.S.C. §§ 77t(a), 78u(a). Congress created the Commission as an independent regulatory agency having the primary responsibility to enforce the federal securities laws and thus primary responsibility to protect the integrity of the nation's capital markets. To that end, Congress gave the SEC broad authority to conduct such investigations as it deems necessary to determine whether any person "has violated, is violating or is about to violate" any provisions of the federal securities laws. 15 U.S.C. § 78u(a). *See also* 15 U.S.C. § 77t(a) (corresponding provision of the Securities Act granting similarly broad authority); *SEC v. Jerry T. O'Brien, Inc*., 467 U.S. 735, 741 (1984).  Further,

Congress gave the SEC authority to investigate "any facts, conditions, practices or matters" that, in its discretion, the SEC deems necessary or proper to aid in the enforcement of the federal securities laws. 15 U.S.C. § 78u(a)(l). Congress specifically authorized the Commission to subpoena witnesses, take evidence, and require the production of books, papers, correspondence, memoranda, or other records that the Commission deems relevant or material to the inquiry. 15 U.S.C. §§ 77s(c), 78u(b).

Second, the subpoena seeks relevant documents and testimony. Information is reasonably relevant to an administrative investigation when it is "not plainly incompetent or irrelevant to any lawful purpose of the [agency]." *FTC v. Church & Dwight Co.*, 665 F.3d 1312, 1315 (D.C. Cir. 2011) (quoting *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992)). When assessing the relevant of information sought in an administrative subpoena, court defer to the agency's determination of the scope of their investigative authority. *Id.* at 1316 (citing *FTC c. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001), and *EEOC v. Lutheran Social Servs.*, 186 F.3d 959, 965 (D.C. Cir 1999)).

The Commission staff, consistent with the Formal Order, has sought documents and testimony from Jenge, Minerco's President, CEO and Director and TACI's CEO, to determine, among other things, the factual bases for certain public statements made by Jenge, Minerco and TACI. The truth and completeness of the statements is at the heart of the Commission's investigation into whether there have been violations of the antifraud provisions of the federal securities laws. The SEC's investigation and the Subpoena issued in connection therewith unquestionably fall within the scope of the Formal Order and the SEC's Congressionally-authorized law enforcement powers to determine whether further enforcement action is warranted against entities or individuals. The Commission staff does not possess the information

sought in the Subpoena, and Jenge is likely the only source for much of the information sought by the Subpoena.

## CONCLUSION

As a result of Jenge's refusal to comply with the Subpoena, the Commission is unable to gain access to relevant information and documents in an investigation that has been authorized for the protection of public investors, notwithstanding the fact that it has properly served an administrative subpoena.  Jenge has not asserted any objection, valid or otherwise, for his failure to comply with the Subpoena. Accordingly, the Commission requests that the Court grant this application and issue: (i) an order, in the form submitted, requiring Jenge to show cause why he should not be ordered to comply with the Subpoena; (ii) if Jenge fails to show adequate cause for his refusal to comply with the Subpoena, an order requiring him to comply with the Subpoena by immediately producing all responsive documents and appearing for testimony; and (iii) such other and further relief as may be necessary and appropriate to achieve compliance with the Subpoena.

Dated: November 30, 2021

Respectfully submitted,

/s/ Melissa Armstrong
Melissa Armstrong
Tel: 202.551.4724
Email: armstrongme@sec.gov
Securities and Exchange Commission
100 F St. N.E.
Washington, DC 20549